LODGED

**CHARLES KINNEY**
5826 Presley Way
Oakland, CA 94618
(510) 654-5133
FAX (510) 594-0883
charleskinney@hotmail.com

2017 SEP -5  AM 9:44

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY

FILED
CLERK U.S DISTRICT COURT

SEP 28 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Plaintiff

No
CV-30

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

CHARLES KINNEY,                    )    Case No. SA CU 17- 1693-JVS(KESA)
            Plaintiff,             )    (a *Southern Division* Case)
                                   )
vs.                                )
                                   )    **COMPLAINT**
THREE ARCH BAY COMMUNITY           )
SERVICES DISTRICT, CHARLES         )
VIVIANI, JOHN CHALDU, LYNN         )
CHALDU and DOES 1 to 10,           )
            Defendants.            )
                                   )    Jury Trial Demanded

PAID

SEP 28 2017

Clerk, US District Court
COURT 4612

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiff CHARLES KINNEY presents his complaint against defendants THREE ARCH BAY COMMUNITY SERVICES DISTRICT ("TAB"), CHARLES VIVIANI ("Viviani"), JOHN CHALDU and LYNN CHALDU (collectively "Chaldu"), and DOES 1 to 10 (all collectively "defendants") under the Clean Water Act [33 U.S.C. Secs. 1251 to 1387] and/or the Declaratory Judgment Act [28 U.S.C. Secs. 2201 to 2202].

PARTIES

1.    CHARLES KINNEY ("Kinney") is an individual who from May 2001 to the present has owned and still owns a legal duplex on real property within the City of Laguna Beach, County of Orange, California, and within the judicial district of this

Complaint                                  1

Court. Kinney has resided in that property at various times and/or has rented the property at other times. Kinney's real property is <u>lower</u> in elevation than, and abuts, the land for which TAB is responsible for surface water runoff drainage into the Pacific Ocean. Kinney's property is <u>higher</u> in elevation than the real property owned by Viviani and the real property owned by Chaldu, and Kinney's property is only separated from those two properties by a paved private street known as Virginia Way. Kinney believes he owns the easterly half of the private street Virginia Way which abuts his property, but he does not own the runoff collection drain inlet box and grate on the westerly half of the private street Virginia Way. Kinney's property has a large concrete swale that goes under his concrete parking pad which allows the runoff to pass over his property, but he does not contribute to any pollutants in that surface water runoff.

2.      THREE ARCH BAY COMMUNITY SERVICES DISTRICT ("TAB") is a government entity under state law (i.e. a community services district formed under Calif. Government Code Secs. 61000 et seq) responsible for surface water runoff from the subdivision known as Three Arch Bay in Laguna Beach; appears to be a MS4 discharger with respect to the control of surface water runoff and the applicable National Pollutant Discharge Elimination System ("NPDES") permit but apparently does not have a NPDES permit; and has intermittently discharged over the last 16 years mud, silt, sand, debris, sediment and/or other pollutants along with the storm water runoff from lands under its control during medium to heavy storm events onto Kinney's property, across Virginia Way, and ultimately into the Pacific Ocean, contrary to the applicable NPDES requirements. During non-storm events, TAB has also discharged on an intermittent basis over the last 16 years certain amounts of mud, silt, sand, debris, sediment, concrete wash-out and/or other pollutants onto Kinney's property, across Virginia Way, and ultimately into the Pacific Ocean, contrary to the applicable NPDES requirements.

3.      CHARLES VIVIANI ("Viviani") is an individual, believed to be a resident of Laguna Beach, and the owner of real property (e.g. individually and/or as the trustor

and/or beneficiary of a trust) which includes artificially-elevated land on his property which creates part of a sediment basin on the private street Virginia Way and a portion of a "point source" discharge pipe and/or concrete swale for surface water runoff from Virginia Way.  Viviani does not have a NPDES permit, but he does contribute to the amount of pollutants that are deposited on Kinney's property by blocking and/or impeding the runoff as it goes across Virginia Way to the west, so there is a discharge of pollutants from a "point source" on his land as defined by the Clean Water Act.

4.    JOHN CHALDU is an individual, believed to be a resident of Laguna Beach, and the owner of real property (e.g. individually, collectively with his wife LYNN CHALDU, and/or as the trustor and/or beneficiary of a trust) which includes artificially-elevated land on his property which creates part of a sediment basin on the private street Virginia Way and a portion of a "point source" discharge pipe, inlet box, and/or concrete swale for surface water runoff from Virginia Way, and includes the runoff collection drain inlet box and grate for that pipe under the westerly half of the private street Virginia Way.  This real property was in the historic path of the surface water runoff before development occurred.  A prior owner in title, Mr. Holt, built the house that is now on this real property and, in that process, altered the surface runoff path to go around this property on the south and onto property owned by Viviani, rather than allow the runoff to go directly through this property as it had done in the past.  JOHN CHALDU does not have a NPDES permit, but he does contribute to the amount of pollutants that are deposited on Kinney's property by blocking and/or impeding the runoff as it goes across Virginia Way to the west, so there is a discharge of pollutants from a "point source" on his land as defined by the Clean Water Act.

5.    LYNN CHALDU is an individual, believed to be a resident of Laguna Beach, and the owner of real property (e.g. individually, collectively with her husband JOHN CHALDU, and/or as the trustor and/or beneficiary of a trust) which includes artificially-elevated land on her property which creates part of a sediment basin on the

private street Virginia Way and a portion of a "point source" discharge pipe, inlet box, and/or concrete swale for surface water runoff from Virginia Way, and includes the runoff collection drain inlet box and grate for that pipe under the westerly half of the private street Virginia Way.  This real property was in the historic path of the surface water runoff before development occurred.  A prior owner in title, Mr. Holt, built the house that is now on this real property and, in that process, altered the surface runoff path to go around this property on the south and onto property owned by Viviani, rather than allow the runoff to go directly through this property as it had done in the past.  LYNN CHALDU does not have a NPDES permit, but she does contribute to the amount of pollutants that are deposited on Kinney's property by blocking and/or impeding the runoff as it goes across Virginia Way to the west, so there is a discharge of pollutants from a "point source" on her land as defined by the Clean Water Act.

6.     Kinney is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 to 10; and will seek leave to amend the operative complaint to show such true names and capacities when the same are ascertained.

7.     Kinney is informed and believes and thereon alleges that each of the defendants was negligently responsible and/or was liable in some manner for the occurrences herein alleged; that Kinney's injuries and damages as herein alleged were proximately caused by defendants' negligence and/or acts (regardless of whether those acts were done intentionally, done willfully, done with reckless disregard, and/or done negligently); and that Kinney's damages now exceed $600,000.

8.     Kinney is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants was acting as an individual or as the agent and/or employee of the remaining defendants and in doing the things herein mentioned was acting within the scope of its authority as such agent and/or employee, and with the permission and consent of its co-defendants.

## NATURE OF THE ACTION

9.     TAB should be a regulated MS4 discharger with a NPDES permit, but it appears TAB may only be subject to a NPDES permit issued to the City of Laguna Beach or a larger geographical area.  Regardless, TAB is a person under the Clean Water Act ("CWA") who cannot, during <u>storm</u> related events, discharge pollutants from the land under its control onto the property of others and/or into the ocean which contain mud, silt, sand, debris and/or sediment, all of which are pollutants under the CWA; and/or cannot, during <u>non-storm</u> related events, discharge pollutants from the land under its control onto the property of others and/or into the ocean that contain mud, silt, sand, debris, concrete wash-out, foam and/or sediment, all of which are pollutants under the CWA.

10.     Viviani and Chaldu are persons under the CWA who cannot, during <u>storm and/or non-storm</u> related events, collect, temporarily retain, and then discharge pollutants from land(s) under their control (e.g. their portion of Virginia Way and the elevated portions of their own lands) onto the property of others and/or into the ocean that contain mud, silt, sand, debris, concrete wash-out, foam and/or sediment, all of which are pollutants under the CWA.

11.     During the last 16 years, TAB has collected and discharged and still intermittently discharges pollutants onto Kinney's property, onto the private street Virginia Way, onto Chaldu's property, onto Viviani's property, onto property controlled by the Calif. Dept. of Transportation (e.g. onto the Pacific Coast Highway ["PCH"] aka South Coast Highway), onto property controlled by the City of Laguna Beach (e.g. into the City's drainage system), and/or into the Pacific Ocean (depending on the volume of the pollutants and/or runoff).  The pollutant discharges by TAB follow a downward path in a westerly direction to the ocean.  The pollutant discharges by TAB come from uncontrolled pollutants getting into the surface runoff and/or being discharged from a "point source" that terminates just uphill of Kinney's property which Kinney has owned

since May 2001. During the last 16 years, Viviani and/or Chaldu have collected and discharged and still intermittently discharge pollutants onto property controlled by the Calif. Dept. of Transportation (e.g. onto the Pacific Coast Highway aka South Coast Highway), onto property controlled by the City of Laguna Beach (e.g. into the City's drainage system), and/or into the Pacific Ocean (depending on the volume of the pollutants and/or runoff).

12. Defendants and/or each of them have discharged pollutants into the waters of the United States without a NPDES permit, and/or in violation of the applicable NPDES permit (if any), from "point source(s)" and/or from surface water runoff during storm and/or non-storm events, intentionally, willfully and/or with reckless disregard of the rights of others and/or the law, all of which have adversely affected and continue to adversely affect Kinney's use and enjoyment of the waters affected by these discharges and/or his person and/or his property.

13. Kinney seeks declaratory judgment(s), injunctive relief, remedial relief, civil penalties payable to the U.S. Treasury, damages, costs, punitive damages, and/or other remedies for violations of the Clean Water Act and/or as allowed by law from the defendants and/or each of them.

## JURISDICTION AND VENUE

14. Jurisdiction and venue for the within action are properly within the jurisdiction of this Court because defendants and/or each of them transact business, reside, and/or cause improper pollution discharges within this judicial district (e.g. Central District) and this particular division (i.e. Southern Division); see 33 U.S.C. Secs. 1319 and/or 1365; and/or 28 U.S.C. Secs. 1331, 1391, 2201 and/or 2202.

15. Defendants and each of them have committed acts and continue to commit acts which violate the Clean Water Act, cause a nuisance, and/or violate some other law, and which have injured and continue to injure Kinney, his property, and his use and enjoyment, within this judicial district.

Complaint 6

16.    Some recent acts by defendants and/or each of them have occurred during the month of March 2016 as to storm-related runoff (e.g. muddy surface water runoff); occurred during the month of April 2015 as to non-storm-related runoff (e.g. concrete wash-out from a construction job in an area under TAB's control); and occurred during the month of June, 2017 as to non-storm-related runoff (e.g. sediment and mud from uphill due to a non-storm water source under TAB's control, which was then collected and retained by Viviani and Chaldu in the Virginia Way sediment basin, and then sent to the ocean after going across PCH and into the City's drainage pipe at 7th Street).

17.    Kinney has standing to file this complaint [e.g. under 33 U.S.C. Sec. 1365] because: (a) he has suffered injury-in-fact to his person and his property by these pollutant discharges, by the associated flooding of his property with polluted runoff, and/or from the deposit of pollutants on his property which he and/or his tenants usually clean up; (b) he has suffered injury-in-fact to his aesthetic and/or recreational interests when he goes into the ocean below his house to swim, surf, snorkel and/or SCUBA dive because of the improper pollutant discharges into that part of the ocean; (c) the improper discharges from TAB proximately cause the injuries to Kinney's person and his property, and proximately cause even more injury to his person and his property when that runoff is impeded, obstructed, collected, redirected and/or discharged by Chaldu's and/or Viviani's abnormally-elevated land[s]; (d) the improper pollutants discharges in the runoff and/or from a "point source" can be corrected and prevented by the installation by TAB of proper erosion controls and/or sediment separators for a relatively inexpensive cost [e.g. by installing straw wattles]; (e) the improper blockage, obstruction, collection and/or redirection of the runoff by Viviani and/or Chaldu which results in pollutant discharges from "point sources" can be corrected and/or prevented for relatively inexpensive costs [e.g. by reducing the height of their land, of land on their westerly half of the private street and/or of the asphalt to allow runoff to proceed towards the west unimpeded]; (f) the defendants and each of them have actual notice of the pollution

discharges and the remedial actions they could take because of the ongoing nuisance and/or trespass state court lawsuits during the last 10+ years, in which there has never been a state court trial on the merits between these parties; and (g) Kinney gave the required written notice(s) on May 8, 2017 {attached} [and this complaint will be filed more than 60 days after that date, and less than or equal to 120 days after than date; the May 8, 2017 notice was sent by certified mail to the defendants and others as required by law; and the May 8, 2017 notice had sufficient information for each defendant and entity noted herein to identify the alleged violations, identify corrective actions necessary to fix the problems, and to fix the problems which they have refused to do for years.]

18.    The violations of the CWA by defendants and/or each of them are continuing on an intermittent basis at this time, and are reasonably likely to continue.

19.    The EPA, Calif. Regional Water Quality Control Board – San Diego Region, Calif. State Water Resources Control Board, City of Laguna Beach, and Orange County have failed to take any action to prevent, minimize and/or eliminate these pollutant discharges; and none of these entities has commenced and/or is diligently prosecuting a civil or criminal action to redress these violations.

<u>VIOLATIONS OF THE CLEAN WATER ACT</u>

20.    The violations by defendants and each of them are the proximate cause of the detriment to Kinney, his property rights, his use and enjoyment and/or his tenants' rights; and, but for the violations of defendants and each of them, that detriment would not have occurred and would not be continuing to occur.

21.    The injury and detriment caused by defendants and each of them have a direct adverse impact on Kinney, his property, his use and enjoyment, and/or his tenants' rights; have a real and continuing risk of ongoing and/or duplicative injuries and damage; and/or, because of the far-reaching detriments to Kinney, will have problems if the damages are apportioned.  The injuries and damages suffered by Kinney are within the "zone of interests" that the CWA was designed to protect, and this legal action will meet

Complaint                                        8

the purposes of the CWA by helping to restore and maintain the "integrity of the Nation's water".

22.     None of the acts of defendants as herein alleged are authorized by law, and none are immune from the provisions of the Clean Water Act ("CWA").

23.     All of the violations of the CWA and/or nuisances caused by defendants and/or each of them could be easily remedied by relatively-inexpensive methods [e.g. installing straw wattles to control erosion, mud, debris and/or runoff which still occur from the steep hillsides under the control of TAB], and/or measures [e.g. removing small amounts of asphalt, concrete blocks, and dirt from land(s) owned and/or controlled by Chaldu and Viviani to allow unrestricted overflow of the surface water runoff toward the ocean rather than continuing to result in ponding and further accumulation of oil, grease and debris from a large area of the private street Virginia Way, and well as the flooding of property(ies) owned by Kinney and others] as noted herein, so that those pollutants are not sent to the public street Pacific Coast Highway and then into the Pacific Ocean.

FIRST CAUSE OF ACTION [Discharge of pollutants without NPDES permit]

24.     Kinney refers to and incorporates paragraphs 1 to 23 above.

25.     Defendants and/or each of them have discharged pollutants as herein alleged from "point sources" and/or in surface runoff without obtaining and/or having a NPDES permit, and thus they have violated the Clean Water Act by discharging and continuing to discharge pollutants into the navigable waters of the United States (aka the Pacific Ocean).

SECOND CAUSE OF ACTION [Discharge of pollutants not allowed by NPDES permit]

26.     Kinney refers to and incorporates paragraphs 1 to 25 above.

27.     Defendants and/or each of them have a NPDES permit which does not allow pollutant discharges as herein alleged from "point sources" and/or in surface runoff, and thus they have violated the Clean Water Act by discharging and continuing to discharge pollutants into the navigable waters of the United States (aka the ocean).

<u>THIRD CAUSE OF ACTION</u> [Declaratory Judgment Act re: rights and legal relations]

28.   Kinney refers to and incorporates paragraphs 1 to 27 above.

29.   An actual controversy has arisen in this judicial district regarding the parties and each of them; their respective rights and duties; and/or their actions and/or omissions noted herein, some of which result in the discharge of pollutants into navigable waters in violation of the CWA and/or nuisance or other laws.  For example, the ownership and/or control of parts of Virginia Way are part of that controversy between Kinney, Viviani and Chaldu, along with the controversy of who has the right and/or obligation to modify, change or improve the parts of Virginia Way, Viviani's land, and/or Chaldu's land that have collectively been acting as a sediment basin for runoff by collecting, retaining, and then allowing pollutants in the runoff (e.g. both storm and non-storm runoff at various times) to be discharged into the ocean in violation of the CWA.

30.   Kinney desires a declaratory judgment as to the rights, duties and obligations for each of the parties herein; as to the other legal relations between and among the parties regarding the matters as noted herein; and/or as to violations of the law as noted herein including any violations of the federal Clean Water Act.

<u>DEMAND FOR JURY TRIAL</u>

31.   Kinney hereby demands a jury trial in this matter.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Kinney prays for judgment against the defendants, and each of them, as follows:

1.   For declaratory judgment(s) that defendants and/or each of them have violated and are continuing to violate the Clean Water Act and other laws (e.g. nuisance laws) as herein alleged;

2.   For temporary and/or permanent declaratory, injunctive, remedial and/or equitable relief regarding the matters as herein alleged;

3.   For general and special damages according to proof as allowed by law;

4. For a declaration of rights, duties, and obligations, and other legal relations of the parties, regarding the issues herein under 28 U.S.C. Sec. 2201 (e.g. as to the ownership and/or control of parts of Virginia Way);

5. For an order requiring defendants and/or each of them to pay civil penalties of up to $37,500 per day of violation to the U.S. Treasury for the number of days of violations by them as allowed by law;

6. For necessary and proper relief under 28 U.S.C. Sec. 2202;

7. For punitive damages;

8. For costs of suit herein incurred; and

9. For other and further relief as this Court may deem proper.

Dated: ___9/2____, 2017   __/s/___Charles Kinney__
              Charles Kinney

## VERIFICATION

I, the undersigned, declare:

That I am the plaintiff in foregoing action; that I have read the foregoing document entitled COMPLAINT, and know the contents thereof; that the same is true of my own knowledge, except as to those matters set forth upon my information and belief, and as to such matters that I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that it was executed on Sept. 2, 2017, at Oakland, California.

        __/s/__Charles Kinney___
        Charles Kinney

Complaint            11

CHARLES G. KINNEY
5826 Presley Way
Oakland, CA  94618
(510) 654-5133
FAX (510) 594-0883
charleskinney@hotmail.com
May 8, 2017

| | |
|---|---|
| Scott Pruitt, EPA Administrator ("EPA")<br>1200 Pennsylvania Ave., NW, Mail Code 1101A<br>Washington, DC  20460 | Enforcing Agency |
| Chair Henry Abarbanel<br>San Diego Regional Water Quality Control Board ("RWQCB")<br>2375 Northside Drive, Suite 100<br>San Diego, CA  92108-2700<br>  Also attn: David Becker; Laurie Walsh | Enforcing Agency |
| Mayor Toni Iseman and City Manager John Pietig<br>City Council, City of Laguna Beach ("City")<br>505 Forest Ave.<br>Laguna Beach, CA  92651 | Violator (accepts pollution) |
| Director Malcolm Dougherty<br>California Department of Transportation ("CalTrans")<br>1120 N Street, MS 49<br>Sacramento, CA  95814 | Violator (accepts pollution) |
| Directors Gary Rubel and Alan Anderson<br>Three Arch Bay Community Services District ("TABCSD")<br>5 Bay Drive<br>Laguna Beach, CA  92651 | Violator (VL sedim. basin) |
| President Stephen Miller and Agent for Service Nikki Roknifard<br>Three Arch Bay Association ("TABA")<br>5 Bay Drive<br>Laguna Beach, CA  92651 | Violator (VdS sedim. basin) |
| Charles Viviani<br>32142 South Coast Highway<br>Laguna Beach, CA  92651 | Violator (VW sediment basin) |
| John Chaldu and Lynn Chaldu<br>32135 Virginia Way<br>Laguna Beach, CA  92651 | Violator (VW sediment basin) |

1

| | |
|---|---|
| Chair Dayna Bochco<br>Cal. Coastal Commission ("CCC")<br>45 Fremont St #1900<br>San Francisco, CA 94105 | Interested Entity |
| Chair Felicia Marcus<br>State Water Resources Control Board ("SWRCB")<br>1001 I Street, 24th Floor<br>Sacramento, CA 95814 | Interested Entity |
| Chair Derek McGregor<br>Orange County LAFCO ("LAFCO")<br>12 Civic Center Plaza, Room 235<br>Santa Ana, CA 92707 | Interested Entity |
| Acting Regional Administrator Alexis Strauss<br>US EPA Pacific Southwest, Region 9<br>75 Hawthorne St.<br>San Francisco, CA 94105 | EPA Regional Office |

Re:   **60 DAY NOTICE OF VIOLATIONS OF THE CLEAN WATER ACT AND NOTICE OF INTENT TO FILE SUIT** [Clean Water Act (see 33 U.S.C. Sec. 1365)] Ongoing mud, silt, debris and other pollutants discharged from point source(s) over the last five years during storm and/or non-storm events into the Pacific Ocean either directly and/or indirectly after being passively accepted by NPDES/MS4 permit holder(s) [This is being sent by certified mail to all the addressees noted above]

Dear EPA Administrator, agencies, violators and others:

I am the person giving notice with my address and other information noted above; and I make the following statements pursuant to 40 C.F.R. Sec. 135 and the Clean Water Act ("CWA").

I own property on Virginia Way, and enjoy recreational and other activities in or near the Pacific Ocean, that are being adversely affected by pollutant discharges noted herein. The nearest public beach to me is 1000 Steps Beach; it is only a few blocks away. I also can move up and down the coast from 1000 Steps Beach on a surf mat that I designed and have made for me. The areas that I can access and enjoy also include rocks, sand and waters seaward of the mean high tide line abutting the Three Arch Bay subdivision on the south all the way to Table Rock beach to the north.

Over the last five years, there were and continue to be ongoing mud, silt, debris and other pollutants being discharged into the waters of the United States via three drainage paths due to the initial acts of Three Arch Bay Association ("TABA") and/or Three Arch Bay Community Services District ("TABCSD"), and the subsequent acts as to the Virginia Way drainage path by John Chaldu, Lynn Chaldu and/or Charles Viviani. All the violators are "persons" as defined under the CWA. None of them have a NPDES permit and/or MS4 permit except for the City and possibly CalTrans.

2

These polluted discharges come downhill onto the property(ies) of homeowners (e.g. onto Kinney's property for the Virginia Way drainage path; onto Rastegari's property for the Stonington Way drainage path), onto a highway controlled by CalTrans, and then into the City's storm water system; and/or go directly into the ocean (e.g. at Vista del Sol in the Three Arch Bay subdivision).

The Three Arch Bay subdivision consists of about 29 acres; it includes undeveloped land and many homes in a gated community with restricted access. It is some times called Three Arches Bay. TABCSD is a community services district ("CSD") formed under Cal. Gov.Code Secs. 61000 et seq. According to reports filed with the Orange County Auditor-Controller, TABCSD "maintains the storm drain system and furnishes security services to the residents" of Three Arch Bay.

TABA is a domestic non-profit organization incorporated in Calif. with Corporate No. C0167060. TABA acts as homeowners association for the residents of Three Arch Bay.

The polluted discharges collected and directed by TABA and/or TABCSD that go into the ocean occur during storm events, on the day(s) after a storm event(s), and/or during non-storm event days.

The polluted discharges collected in and then redirected by the sediment basin on Virginia Way ("VW") as owned, operated and/or controlled Chaldu and Viviani (e.g. by removing a drain cover; by maintaining the artificially-elevated western edge of the basin) that go into the ocean occur during storm days, on the day(s) after a storm event day(s), and/or during non-storm event days.

The polluted discharges from the drainage paths of Virginia Way and/or Stonington Way that are passively accepted by Caltrans on South Coast Highway ("SCH"), then passively accepted by the City in its storm water drainage system at 7th St., and then go into the ocean occur during storm event days, on the day(s) after a storm event day(s), and/or during non-storm event days.

The polluted discharges occur every time the Orange County Laguna Beach No. 100 rain gauge indicates that one half inch (0.5 inch) or more of rain has fallen per day, and usually when there is more than 0.3 inch of rain after the ground has been saturated from rain on the day(s) before.

The polluted discharges in the Virginia Way drainage path are easily observed during the day. The discharges sometimes occur at night, so those events are not easily recorded or observed. The storm water coming down the Virginia Way drainage path is first polluted by acts of TABCSD and/or TABA (e.g. due to lack of proper erosion control), and then the polluted storm water is collected and redirected by acts of and related to the sediment basin owned, operated and/or controlled by homeowners Lynn Chaldu and John Chaldu and/or Charles Viviani, all of whom about Virginia Way on the west side, and all of whom own, operate and/or control of the operation of that large, shallow sediment basin on Virginia Way (e.g. see Cal. Civil Code Secs. 831, 845, 1714 and 3483). Many times, I have observed the mud and sediment during rains and/or remaining on Virginia Way and/or on my property after the rain(s) have occurred.

The polluted discharges in the Stonington Way drainage path go by Rastegari's house on the south side which is believed to be frequently unoccupied. Once past that house, the polluted discharges can be easily observed during the day when the drainage gets to the South Coast Highway ("SCH",

3

aka Pacific Coast Highway or PCH). Many times, I have observed the mud and sediment during rains and or that remain on the SCH just west of that house after rain(s) have occurred.

The polluted discharges in the Vista del Sol drainage path might be easily observed but it is part of the Three Arch Bay subdivision, so only those living in that gated community can usually observe it. Because the Three Arch Bay subdivision was created before the Calif. Coastal Act, it is a "white hole" which means that public access to the beach is not allowed (e.g. so the public cannot observe how much mud and sediment is in the storm water being discharged into the ocean).

The polluted discharges from the Virginia Way drainage path come out onto SCH near the northwest corner of Chaldu's property; **and** the polluted discharges from the Stonington Way drainage path come out onto SCH near Rastegari's house. Both of these polluted discharge waters then flow north in the gutter on the east side of SCH which is owned, operated and/or controlled by Caltrans; go into the City's municipal storm water system on the east side of SCH near the hospital at 7th St.; go west through a pipe under SCH; go into the City's large "water tower" energy diffuser or dissipater on the beach; and then go into the ocean.

Since about 2002 or earlier, CalTrans has known about the discharges of pollutants (e.g. from a state court lawsuit filed by TABCSD in Orange County Superior Court Case No. 01CC15035, in which CalTrans was named as a defendant and/or cross-defendant), but CalTrans has done nothing to stop the polluted discharges. It is unknown if CalTrans has a NPDES or similar permit.

Since about 2001 or earlier, City has known about the discharges of pollutants (e.g. from a state court lawsuit filed by TABCSD in Orange County Superior Court Case No. 01CC15035 in which City was named as a defendant by TABCSD), but City has done nothing to stop the polluted discharges. It is believed that City has a NPDES permit and/or MS4 permit.

The polluted discharges from the Vista del Sol drainage path go into the Pacific Ocean near where that road terminates in Three Arch Bay on the west end by La Senda. The polluted storm water occurs within the Three Arch Bay subdivision until that is discharged into the ocean.

It is believed that the SWRCB can issue certain permits to a "person" under the CWA but for activities occurring outside of a city with a NPDES permit and MS4 permit, such as the City of Laguna Beach. Here, it is believed that SWRCB issued permits when asked to do so by TABA and/or TABCSD even though TABA and TABCSD were entirely with the boundaries of the City of Laguna Beach from 1987 onward, and as a result, they should have asked the RWQCB for a permit to built sediment basins rather than asking the SWRCB.

The history: From at least 1992 to the present, there has been uncontrolled erosion from the steep hillsides controlled by TABCSD and/or TABA into the Virginia Way drainage path. The Virginia Way drainage path has historically drained at least 8.5 acres. That erosion has resulted in mud, debris and silt being sent into the Pacific Ocean at one of the most famous beaches in Laguna Beach, 1000 Steps Beach. Before getting to my property, the eroded materials go into a sediment basin above Vista Linda ("VL"), into a large pipe, into an energy diffuser or dissipater, and into an old concrete block collection area just behind my property, all of which are owned, operated and/or

4

controlled by TABCSD and/or TABA. Next, on the way to the ocean, those eroded materials go across my property located at 32132 and 32134 Virginia Way. Those eroded materials get collected and redirected by a shallow sediment basin on Virginia Way ("VW"), go onto SCH, go into the City's municipal storm system, and then go into the ocean. In addition, from my observations, there was a lack of erosion controls installed uphill from those sediment basin(s).

Up to about 2010, some of the storm water that should have gone into the Stonington Way drainage path was sent to the Virginia Way drainage path. The Stonington Way drainage path has historically drained at least 3.7 acres. In addition, from my observations, there was a lack of erosion controls installed in the Stonington Way drainage path.

As a result of an adverse decision in Case 01CC15035 against TABCSD on June 23, 2008, TABCSD and/or TABA changed the flow of storm water in 2009 and/or 2010 so that Stonington Way received the storm water runoff for the surface area that historically drained into the Stonington Way drainage path. However, as part of those same changes in 2009 and/or 2010, new storm water that had historically drained into the Vista del Sol drainage path was added to the Virginia Way drainage path above the sediment basin near Vista Linda, resulting in more erosion products in the storm water runoff going into the Virginia Way drainage path.

As for the Vista del Sol drainage path, similar sediment basin(s) were constructed by TABCSD and/or TABA which allowed eroded materials to go into the ocean. The Vista del Sol drainage path has historically drained at least 36 acres. In addition, from my observations, there was a lack of erosion controls installed uphill from the Vista del Sol ("VdS") sediment basin(s).

As noted herein, the pollutions from erosion is caused by several methods and, at the same time, the eroded materials reach the ocean due to several different methods and reasons.

One pollutant source is the goats. During the summer, TABCSD and/or TABA uses goats for fire control. The hooves of the goats break the soil cap on the steep slopes of the easily-eroded hillsides. The goats are allowed to stay on the land too long, the land is overgrazed, and there are not enough BMP, BCT, BPT and/or BAT control methods under the CWA in place to stabilize the loosened soil (which then quickly erodes during rains).

One pollutant source is construction. At various times, TABCSD, TABA and/or individual homeowners in Three Arch Bay engage in construction projects on the steep hillsides without creating a proper SWPPP and/or using enough proper erosion control methods (e.g. via BMP, BCT, BPT and/or BAT). It appears the proper permits were not obtained from the City and/or RWQCB in 2009 and 2010, but instead some permits were obtained from SWRCB. No one is properly monitoring these construction projects for "inadvertent" discharges, and there are not enough BMP, BCT, BPT and/or BAT control methods being used in the Three Arch Bay subdivision. As a result, non-storm pollutants such as concrete washout water also routinely come down the hill in the Virginia Way drainage path, and probably come down in the other drainage paths too.

For example, major storm water construction project(s) in the drainage area(s) started in about 2009 and were completed in about 2010 without a SWPPP approved by RWQCB and/or without permits

issued by the City. TABA's storm water construction project for Vista Del Sol and La Senda in 2010 had a SWPPP reviewed by the SWRCB (see WDID No. 9 30C 358651 submitted 6/30/10). However, the two construction projects were split apart, so one project was below the SWPPP's acreage limitation (which assumes they were not part of this 29 acre planned development).

Once both projects were completed in 2010, the Vista del Sol drainage area sent extra storm water via a hidden pipe into the Virginia Way drainage area, causing heavy soil erosion which promptly filled new "sediment basin" in the Virginia Way drainage path (aka a large concrete funnel just above Vista Linda) during a Nov. 2010 rain. One month later, the Dec. 2010 rains did the same thing to that new sediment basin above Vista Linda and also filled the Virginia Way sediment basin (as operated by Viviani and Chaldu) with mud and sediment. It is believed that this still occurs.

One pollutant source is the lack of enough BMP, BCT, BPT and/or BAT control methods under the CWA for erosion control on the steepest parts of the hillsides. In other words, there are not enough straw wattles, sandbag dams, or sediment separators (active or passive) on the steep parts of the Three Arch Bay subdivision. Because of that, when fire hydrants, hot tubs, or swimming pools are flushed, that "clean" water picks up eroded materials on the streets, hills and/or in the pipes, and discharges those pollutants into the ocean (e.g. usually on non-storm days).

As noted in the EPA's Jan. 27, 2015 letter to me, RWQCB has known about this since June 2013, but has not stopped these pollution discharges. The City of Laguna Beach claimed in its Oct. 22, 2013 letter that TABCSD's facilities were "not covered" by the City's NPDES/MS4 permit.

However, the RWQCB's May 18, 2015 letter indicates City must do something to stop TABCSD's polluted discharges (i.e. the City "cannot passively receive illicit discharges by third parties into the City's MS4") or the City "essentially accepts responsibility for discharges into the MS4 that it does not prohibit or otherwise control". The same should apply to CalTrans when it passively accepts polluted discharges onto its highway SCH (e.g. assuming it has a NDPES or similar permit).

Caltrans and the City have known about this pollution for over a decade because of TABCSD's 2001 state court lawsuit Orange County Superior Court Case No. 01CC15035 (in which the City, CalTrans, Chaldu, Viviani, and me were named as defendants and/or cross-defendants).

The polluted discharges from the Virginia Way and Stonington Way drainage paths goes north to a drain at 7th Street (because of Caltrans changed the slope of that highway from the south to the north), through the City's pipes to the City's "water tower" on the beach, and into the ocean.

Given the $37,500 in civil penalties available per day per violator under the CWA, during the last 5 years it appears that somewhere between $5 and $10 million in civil penalties in total can be collected from the violators (e.g. TABCD, TABA, Chaldu, Viviani, City of Laguna Beach and/or CalTrans) and made payable to the US Treasury.

<u>Pollutant standards or limitations:</u>  Mud, sediment, sand and other pollutants are not allowed in storm water runoff, but that is occurring here. The use of BMP, BCT, BPT and/or BAT control methods under the CWA are mandated to reduce mud, sediment, sand and other pollutants, but here

those control methods are not being used by the "primary" violator(s) and/or there is simply not enough of those control methods being used and/or installed by the "primary" violator(s).

If a "person" applies for and is issued a NPDES permit, some amounts may be allowed to be discharged into the ocean based on size, amount and/or characteristics (e.g. certain sized sand that replenishes the beaches), and certain control methods may be specified in that permit.

Here, none of the "primary" violators such as TABCSD, TABA, Chaldu and Viviani have a NDPES and/or MS4 permit; and it is believed the "secondary" violators such as City and/or CalTrans are passively accepting pollutants prohibited by their own NPDES or similar permits.

Government agencies that can stop this pollution, but have not so acted to date:

At the federal level, the EPA is the agency with authority to stop these polluted discharges. The CWA indicates the EPA has authority over this. 33 U.S.C. Secs. 1361 et seq.

At the state level, the RWQCB is the agency with authority to stop these polluted discharges. It is possible that the Cal. Coastal Commission ("CCC") and/or CalTrans could help in stopping this pollution but, to date, they have done nothing.

For example, TABCSD requested a permit from the CCC in 2003 (Application 5-03-298, which was submitted after the 2001 case 01CC15035 had been filed by TABCSD) regarding the enlarging "flood control debris basin" on Vista Del Sol, but it seems the CCC was never told about the other changes to the sediment basins noted herein, or was told but ignored them.

As another example, CalTrans has requirements for its own sediment basins (e.g. 3,600 cubic feet of storage for each 1 acre of drainage), but TABCSD's sediment basin above Vista Linda as built in 2010 is believed to be less that 30,000 cubic feet in size for 8.5 acres of drainage.

At the county level, LAFCO could help in stopping this pollution. For example, in 2012, the Orange County Grand Jury questioned why TABCSD was still in existence to which TABCSD provided a "Let There Be Light" response on July 2, 2012 that didn't really address the issues (e.g. which was filing its 01CC15035 case and after the adverse decision in June 23, 2008 therein; and after the 2009-2010 changes were made to the sediment basins in Three Arch Bay).

At the city level, the City of Laguna Beach (who was/is subject to NPDES Municipal Storm Water Permit Order No. R9-2013-0001) could help in stopping this pollution but, to date, it has done nothing. For example, an Investigative Order was issued to the City on May 18, 2015 by the RWQCB regarding the issues noted herein, but the City did not do a thorough investigation as to TABCSD, TABA or the Three Arch Bay subdivision (even though the City was a defendant as of 2001 in TABCSD's 01CC15035 case). Instead, City blamed the complaining party, and ignored the RWQCB's comments about it passively-accepting polluted storm water.

Related correspondence to date: Each of the addressees should have or can easily get copies of correspondence including at a minimum: City's Oct. 22, 2013 letter to me; EPA's Jan. 27, 2015

letter to me; RWQCB9's May 18, 2015 letter to City of Laguna Beach requesting a technical report; City's July 17, 2015 response to the RWQCB's May 18, 2015 letter with the City's technical report; photos of the "highly erodible" watershed; and some of the June 2009 "plans" for "Vista de Catalina Storm Drain Improvements" (e.g. sediment or debris basin above Vista Linda) with Drew Harper of TABA as a contact person and nothing about a permit from the RWQCB; TABA's SWPPP for 2010 changes to Vista del Sol and La Senda streets with a permit from the SWRCB; and EPA's Sept. 27, 2015 letter to me advising that I might consider filing a citizen's complaint.

Simple and inexpensive solutions exist as to these problems:

The "primary" and "secondary" violators have inexpensive ways to stop the polluted discharges.

For example, TABA and/or TABCSD should modify their sediment basin(s) and uphill areas under their control to stop the mud and sediment from being created (e.g. install enough erosion controls uphill) and to create a place in their sediment basin(s) or above them to collect or settle-out sediment and mud without sending that immediately down the hill (e.g. cover the lower portion of the holes in the vertical pipe in the sediment basin). TABCSD and/or TABA should install enough straw wattles and sand bag dams uphill of their sediment basin(s) to prevent erosion, and establish method(s) to keep those wattles and dams in working order.

Chaldu and Viviani should stop collecting polluted runoff and redirecting that polluted runoff to others by modifying the Virginia Way sediment basin under their control by each installing overflow surface drain trenches (e.g. lowering the elevations of the western side of Virginia Way and lowering the eastern side of their land), so that they do not collect and redirect the polluted runoff. See Sierra Club v. Abston Constr. Co., Inc., 620 F.2d 41, 45-46 (5th Cir. 1980) and Comm. to Save Mokelumne River v. East Bay Muni. Util. Dist., 13 F.3d 305, 308-309 (9th Cir. 1993).

Each "secondary" violator [e.g. City and/or CalTrans] who passively allows pollutants in runoff into their drainage systems should initiate prosecution of "primary" violators causing the polluted discharges. The regulatory agency(ies) [e.g. EPA or RWQCB] should prosecute the violators.

Actions requested:

These violators should stop collecting polluted runoff in sediment basin(s), and/or directing, redirecting, and/or accepting polluted runoff, all of which are being discharged into the ocean.

If the appropriate agency or entity does not take action within the next 60 days, I will file a citizen's lawsuit against the violators and the entities that refuse to do their jobs under the CWA; and I will seek at a minimum civil penalties of $37,500 per day per "primary" and/or "secondary" violator payable to the US Treasury along with other damages. 33 U.S.C. Secs. 1361 et seq; Natural Resources Defense Council v. Los Angeles, 725 F.3d 1194, 1197-1210 (9th Cir. 2013).

Charles Kinney
Owner of the duplex at 32132 and 32134 Virginia Way, Laguna Beach, CA

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| CHARLES KINNEY | THREE ARCH BAY COMMUNITY SERVICES DISTRICT, CHARLES VIVIANI, JOHN CHALDU, LYNN CHALDU AND DOES 1 to 10 |

| **(b)** County of Residence of First Listed Plaintiff   ALAMEDA<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   ORANGE<br>*(IN U.S. PLAINTIFF CASES ONLY)* |
|---|---|

| **(c)** Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.<br><br>Charles Kinney, 5826 Presley Way, Oakland, CA 94618 510-654-5133 | Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|

| **II. BASIS OF JURISDICTION** (Place an X in one box only.) | **III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only<br>(Place an X in one box for plaintiff and one for defendant) | | | |
|---|---|---|---|---|
| ☐ 1. U.S. Government Plaintiff    ☒ 3. Federal Question (U.S. Government Not a Party) | | **PTF DEF** | | **PTF DEF** |
| | Citizen of This State | ☐ 1  ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4  ☐ 4 |
| | Citizen of Another State | ☐ 2  ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5  ☐ 5 |
| ☐ 2. U.S. Government Defendant    ☐ 4. Diversity (Indicate Citizenship of Parties in Item III) | Citizen or Subject of a Foreign Country | ☐ 3  ☐ 3 | Foreign Nation | ☐ 6  ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 600,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Clean Water Act (33 U.S.C. Secs. 1251 to 1387); pollutant discharges into navigable waters without NPDES permit and/or in violation of NPDES permit from point sources and/or in surface water runoff

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☒ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other<br>☐ 448 Education | ☐ 790 Other Labor Litigation<br>☐ 791 Employee Ret. Inc. Security Act | |

| **FOR OFFICE USE ONLY:**   Case Number: SA CV 17-1693 | |
|---|---|
| CV-71 (10/14) | **CIVIL COVER SHEET** |

Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | | Western |
| If "no, " skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | | Southern |
| | ☐ Riverside or San Bernardino | | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☒ | ☐ | ☐ |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| ☒ Yes    ☐ No | ☐ Yes    ☒ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| if "no," go to question D2 to the right.  ➡ | If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ↓ |

| QUESTION E:  Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | SOUTHERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes   ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?                    ☒ NO          ☐ YES

If yes, list case number(s):   This action is unique via a 5 year citizen's lawsuit under the Clean Water Act

**IX(b). RELATED CASES**: Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO          ☐ YES

If yes, list case number(s):   This action is unique via a 5 year citizen's lawsuit under the Clean Water Act

**Civil cases** are related when they (check all that apply):

☐  A. Arise from the same or a closely related transaction, happening, or event;

☐  B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐  A. Arise from the same or a closely related transaction, happening, or event;

☐  B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   /s/ Charles Kinney                    DATE:  9/2/17

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |